**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| | ) | |
| RICHIE ENTERPRISES LLC d/b/a | ) | |
| RICHIE PHARMACAL | ) | |
| | ) | |
| *Plaintiff,* | ) | No. 1:26-cv-1085-JMC |
| | ) | Hon Jia M. Cobb |
| *v.* | ) | U.S. District Judge |
| | ) | |
| PAMELA JO BONDI, *et al.,* | ) | **Hearing Requested** |
| | ) | |
| *Defendants.* | ) | |

**PLAINTIFF RICHIE ENTERPRISES LLC'S STATEMENT
OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION
FOR A PRELIMINARY INJUNCTION AND EXPEDITIOUS HEARING**

This lawsuit—and motion for preliminary relief—is a "bet-the-company"

action by Plaintiff Richie Enterprises LLC d/b/a Richie Pharmacal ("Richie"), a

wholesale distributor of prescription drugs.  Over two months have passed since

Defendants issued an order immediately suspending Richie's registration with the

Drug Enforcement Administration ("DEA"), without warning or a prior hearing.

DEA alleged that Richie's continued registration with DEA represented an

"imminent threat" of harm to the public health or safety, but failed to articulate

how it came to that conclusion and chose to ignore facts that contradicted its

conclusion.

DEA's January 30, 2026 order offered a post-suspension hearing date of

March 17, 2026, to comply with constitutional due process protections.  On

February 25, 2026, Richie requested a hearing date as soon as practical.  Contrary

1

to DEA's own regulation, DEA never provided Richie with a prompt hearing. In fact, DEA never assigned an administrative law judge to hear Richie's case until *mere hours after* Richie filed the Complaint in this action, and no (delayed) hearing date has been set.

Having lost any chance for a *prompt* post-suspension hearing required by the Fifth Amendment and DEA's own regulations, Richie brings this motion for a preliminary injunction seeking immediate relief. In support of its motion for preliminary injunction, Richie also challenges DEA's order as arbitrary and capricious.

Richie meets the four-part test used by the Court to decide a preliminary injunction. It is likely to *succeed on the merits* of this action, including because it has been denied the chance for a prompt post-suspension hearing and because Defendants' ISO is arbitrary and capricious. At this point, Richie has suffered, and will continue to suffer, *irreparable injury* that has pushed the company to the brink of closure. Loss of customers, sales, goodwill, and finances necessitate that, without emergency injunctive relief, Richie will have to close its doors. The *balance of the equities* weighs in favor of Richie, who continues to be harmed on a day-by-day basis, whereas Defendants can claim little to no harm by a preliminary injunction, particularly where they continue to withhold a hearing date. Finally, preliminary relief is in the *public interest*, including so that Richie's customers can continue to receive important and necessary medication for their patients.

2

## FACTUAL BACKGROUND

Richie is a family-owned generic pharmaceutical distributor founded in 1972 and located in Glasgow, Kentucky.  **Ex. A.** (*Declaration of Dawn Boyter*) ¶ 2.  It is one of the oldest wholesale distributors in the pharmaceutical industry and employs approximately thirty full- and part-time employees, many long-tenured, whose families rely on their employment at Richie.  *Id.*  The company distributes pharmaceutical drugs to independent pharmacies, hospitals, clinics, physician offices, repackagers, and small wholesalers.  *Id.* ¶ 3.  These drugs include both controlled substances and non-controlled substances.  *Id.*

For over fifty years, Richie has been registered with the DEA as a distributor, including under Certificate of Registration ("COR") RR0355683, which authorizes Richie to purchase, store, and sell controlled substances.  *Id.* ¶ 4.  Richie is also licensed as a drug distributor with its home state of Kentucky, and it maintains non-resident licenses in approximately 46 states to which it ships to customers.  *Id.*

On January 30, 2026, DEA issued an Immediate Suspension Order ("ISO")— signed by DEA Administrator Terrance Cole—that immediately suspended Richie's COR and authorized DEA to seize Richie's controlled substance inventory, COR, and order forms.  **Ex. B** (*Jan. 30, 2026 Order to Show Cause and Immediate Suspension of Registration*).  An ISO is an extraordinary measure, and the Attorney General may only issue an ISO under the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 801-904, where she—or her designee—determine there is an "imminent danger to the public health or safety."  21 U.S.C. § 824(d)(1).  The ISO against

Richie—issued without warning and without a prior opportunity to be heard—is without basis in fact and law, and it has abruptly halted Richie's ability to distribute controlled substances, threatening the existence of the company.

The ISO set forth two sets of allegations.  The first set alleged that Richie failed to perform adequate due diligence of potential and existing customers, failed to maintain an adequate system to detect and report suspicious orders of controlled substances, and filled (instead of reporting) certain purported suspicious orders (collectively, the "*Suspicious Order Allegations*").  Ex. B, at 9-12.  The *Suspicious Order Allegations* arise from conduct between October 2020 and February 2024.  *Id.*

The second set of allegations involved an October 2025 phishing scheme by which Richie fell victim to an individual, posing as a DEA special agent, who claimed to be setting up a "sting" operation to catch thieves who had previously intercepted packages of controlled substances to and from Richie.  Ex. B, at 7-9. Believing the messages from the imposter DEA agent to be legitimate and that she was acting at the direction of federal law enforcement, Richie's CEO arranged for 60,000 pills of oxycodone to be left on Richie's loading dock, where they were picked up on October 8, 2025.  Ex. A, ¶¶ 11-12.  When Richie's CEO became concerned that Richie had been scammed, she immediately reached out to the local DEA field office, who advised her that the imposter "agent" did not exist and directed her to contact the police.  *Id.* ¶ 13.  Richie contacted local police and filed a written report with DEA on October 14, 2025.  *Id.* ¶ 14.  In the ISO, DEA alleged that Richie failed to maintain effective controls against diversion when it was scammed by the imposter

agent and also faulted Richie for failing to file a written report of theft within one business day, despite Richie immediately calling to notify DEA the moment it had cause for concern (the "*Imposter Theft Allegations*").  Ex. B., at 7-9.

Despite the staleness of the *Suspicious Order Allegations* (ending two years prior) and the unique and also stale nature of the *Imposter Theft Allegations* (ending over three months prior) by which Richie fell victim to sophisticated scammers, DEA concluded that Richie's continued registration created a "substantial likelihood of an imminent threat that death, serious bodily harm, or abuse of controlled substances will occur in the absence of this suspension." *Id.* at 13.  The ISO makes no attempt to show a rational connection between the allegations and this conclusion.  Additionally, the ISO fails to consider significant remedial measures that Richie took in 2025 to address the *Suspicious Order Allegations*, most of which were shared with DEA over the course of multiple meetings in 2025.  Ex. A ¶¶ 9-10.  Nor did the ISO consider the one-off nature of the *Imposter Theft Allegations* and the small likelihood that Richie would fall prey to a similar scam in the future.  The ISO also did not consider certain remedial actions and security measures that Richie has taken since October 2025 to ensure that the company and its personnel will not be taken advantage of again by scammers in the future.  *Id.* ¶ 26.  And DEA declined Richie's request to meet to discuss these responsive measures.  *Id.* ¶ 15.

In the same document as the ISO, DEA also issued an Order to Show Cause ("OSC") that proposed to permanently revoke Richie's COR and offered an

5

opportunity for a post-suspension hearing before a DEA administrative law judge ("ALJ") on the merits of the allegations that served the basis for the ISO and OSC. Ex. B.  The OSC set a hearing date of March 17, 2026, "or on such a subsequent date designated by the" ALJ.  *Id.* at 1.  On February 10, 2026—*eleven days after* the DEA Administrator signed the ISO—DEA investigators and agents appeared at Richie to execute the ISO and serve the OSC.  Ex. A ¶ 16.  When DEA executed the ISO on Richie, the agents took away Richie's COR and seized the company's entire controlled substance inventory valued at approximately $675,058.21.  *Id.* ¶¶ 17, 23(a).

On February 25, 2026, Richie filed an answer to the OSC's allegations and a request for a hearing.  **Ex. C** (*Richie Hearing Request*).  Due to the significant harm to Richie by the ISO, Riche requested that the hearing "be scheduled as soon as practically possible."  *Id.* at 1.  On February 26, 2026, DEA's Office of Administrative Law Judges sent a letter to counsel for Richie noting that DEA was "working diligently to assign this matter" to an ALJ and that the parties would be "notified as soon as an [ALJ] is assigned and prehearing proceedings begin/resume."  **Ex. D** (*Hearing Receipt Notice*).

Despite Richie's request for a hearing as soon as possible, and the guarantees in DEA's own regulations that, in the case of an ISO, DEA "shall fix a date for such hearing as early as reasonably possible" upon request for an earlier hearing, 21 C.F.R. § 1301.36(h), DEA never notified Richie for over thirty days that an ALJ had been assigned to the matter, nor did the agency provide Richie with its requested

prompt hearing date. Ex. A ¶ 20. The proposed March 17, 2026 hearing date came and went, and DEA failed to respond with any sort of urgency or promptness to Richie's request for an expeditious hearing. It was only in the *hours after* Richie filed this lawsuit on March 31, 2026—and notified DEA of the same—that an ALJ appeared and issued an Order for Prehearing Statements. **Ex. E** (*Order for Prehearing Statements*). Richie still has no hearing date, and only a prehearing conference (not hearing) for April 9, 2026 has been set[1]. *See id.*

But even if DEA were to set a hearing date for tomorrow, the ALJ's Order for Prehearing Statements—filed mid-litigation in this lawsuit challenging the ISO—is too little too late. It does not cure Defendants' blatant violation of Richie's due process rights and disregard for DEA's own regulations. Because Richie lost all opportunity for a prompt hearing, and because of the significant and irreparable harm to the company (described in more detail below), Richie has been forced to bring this action for emergency and preliminary injunctive relief against Defendants.

**STATEMENT OF JURISDICTION**

A federal district court has jurisdiction to hear challenges to federal agency actions for civil actions arising under the Constitution and federal laws, such as are

---

[1] The Order for Prehearing Statements provides no sort of guarantee as to when a hearing may take place. All that has been scheduled is the exchange of the parties' prehearing statements and a prehearing conference. *See* Ex. E, at 2-4. Numerous other prehearing steps must take place before a hearing can begin, including an exchange of exhibits, issuance of subpoenas, and the ALJ's ruling on prehearing motions. *See* 21 C.F.R. § 1306.52; Ex. E, at 4 & n.5.

at issue in this action.  28 U.S.C. § 1331.  Under 21 U.S.C. § 824(d), the Attorney

General or, by delegation, the DEA Administrator, may issue an ISO of a DEA

registrant's COR prior to an ALJ administrative hearing and final order by the

DEA Administrator.  The ISO is served concurrent with an OSC that lists the

allegations against the registrant and provides an opportunity for a hearing as to

why DEA should not permanently revoke the COR.  21 C.F.R. § 1301.36(e).  By

statute, the ISO remains in effect until the conclusion of the administrative

hearing, including judicial review, unless it is first withdrawn by the DEA

Administrator "or dissolved by a court of competent jurisdiction."  21 U.S.C.

§ 824(d)(1).  As another court in this district recently held, the statute

"unmistakably acknowledges some courts' ability to cancel ISOs before a final

determination on the registration revocation."  *Adya LLC v. DEA*, No. 1:26-cv-141,

2026 U.S. Dist. LEXIS 60710, at \*8 (D.D.C. March 23, 2026).

As a result, federal courts, including courts within the D.C. Circuit, have

found that the district court properly has jurisdiction to hear challenges to ISOs

prior to a final order by the DEA Administrator subsequent to any administrative

hearing procedures.  *E.g.*, *id.* at \*14 ("The bottom line is this Court's jurisdiction [to

hear the challenge to an ISO] is proper."); *Novelty Distribs. v. Leonhart*, 562 F.

Supp. 2d 20, 28 (D.D.C. 2008) ("This Court agrees that the language of 21 U.S.C.

§ 824(d) implies that it is the district court that is the 'court of competent

jurisdiction' to review challenges to an immediate DEA suspension imposed prior to

an administrative hearing and a final agency determination."); *Neil Labs., Inc. v.*

*Ashcroft*, 217 F. Supp. 2d 80, 84 n.6 (D.D.C. 2002) ("This court agrees . . . that the plain language of the CSA signifies that a registrant subject to immediate suspension of registration may seek judicial review by a district court before the suspension order becomes final."); *see also Norman Bridge Drug Co. v. Banner*, 529 F.2d 822, 823-24 (5th Cir. 1976) ("The plain language of this section means that one faced with becoming the victim of the harsh expedient of suspension without prior notice may resort to the appropriate district court in search of appropriate relief.").

**LEGAL STANDARD**

Courts evaluate preliminary injunction motions by determining whether the plaintiff has established that (1) it is likely to succeed on the merits, (2) that it is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in its favor, and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 22 (2008). When the government is the party opposing the preliminary injunction, the third and fourth factors merge. *Nken v. Holder*, 556 U.S. 418, 435 (2009).

Due process challenges to an agency's deprivation of a registration or license require courts to consider (1) the private interests at stake, (2) the risk of erroneous deprivation of those interests posed by existing procedures and the probable value of further safeguards, and (3) the government's interest. *Matthews v. Eldridge*, 424 U.S. 319, 335 (1976).

Pursuant to the Administrative Procedure Act ("APA"), courts must review an agency's actions under the arbitrary and capricious standard of review. *See*

9

*Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 214 (D.D.C. 2012) (compiling

federal caselaw where courts apply the arbitrary and capricious standard to "claims

challenging the issuance of an ISO under 21 U.S.C. § 824(d)"). While government

agency actions are generally afforded a presumption of validity, the agency's actions

must still be supported by rational facts and a satisfactory explanation of the

government's actions. Specifically,

> The scope of review under the "arbitrary and capricious" standard is narrow and a court is not to substitute its judgment for that of the agency. Nevertheless, the agency must examine the relevant data and articulate a satisfactory explanation for its action[,] including a rational connection between the facts found and the choice made. In reviewing that explanation, we must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. Normally, an agency [action] would be arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Veh. Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)

(citations and quotation marks omitted).

## ARGUMENT

For the reasons that follow, the Court should grant Richie's motion for a

preliminary injunction against Defendants.

### I.    Richie is likely to succeed on the merits.

Richie is likely to succeed on the merits of this action because (1) Defendants

violated Richie's due process rights by failing to provide Richie with a prompt post-

suspension hearing as required by the Constitution and DEA's own regulations; (2)

10

Defendants acted arbitrarily and capriciously by failing to rationally and adequately explain its determination that Richie's continued registration was an "imminent danger" to the public health or safety, including for a majority of conduct that is over two years' old; and (3) Defendants acted arbitrarily and capriciously by failing to consider evidence of Richie's corrective measures that have addressed all of DEA's allegations, many of which were shared with DEA throughout 2025.

### A. Defendants violated Richie's due process rights by failing to schedule and conduct a prompt post-suspension hearing.

Richie is likely to prevail as to its due process claim against Defendants because DEA has failed to provide it with a prompt hearing. The Fifth Amendment ensures that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. A due process challenge requires that Richie first demonstrate that it has been deprived of a protected interest in liberty or property before turning to the question of whether the "[government's] procedures comport with due process." *Gen. Elec. Co. v. Jackson*, 610 F.3d 110, 117 (D.C. Cir. 2010).

*First, Richie has a protected property interest in its suspended COR.* In due process challenges involving registrations or licenses, federal courts distinguish between *applicants* for a registration and those who already *hold* a registration. *See 3883 Conn. LLC v. District of Columbia*, 336 F.3d 1068, 1072 (D.C. Cir. 2003). In cases involving revocation or suspension of an *existing* registration, the focus is on "the official's discretion to revoke or suspend the permit." *Id.* Where an agency can revoke or suspend a registration "at any time for any reason" under the

11

regulatory scheme, no constitutionally protected property interest exists. *Id.* But where the statutory or regulatory scheme *limits* the discretion of the agency to revoke or suspend a registration, the plaintiff has a protected property interest in the existing registration. *See id.* (holding that a builder had a protected property interest in a preliminary building permit that the city revoked without a hearing, where city codes limited the discretion to revoke an existing permit); *see also Barry v. Barchi*, 443 U.S. 55, 64 n.11 (1979) (holding that plaintiff had a property interest in a horse trainer's license because, under state law, the license could "not be revoked or suspended at the discretion of the racing authorities").

The CSA provides such restraints to DEA's discretion to suspend an existing COR, permitting it only in cases where DEA "finds that there is an imminent danger to the public health or safety." 21 U.S.C. § 824(d)(1). DEA's discretion is further restrained by imposing a stringent definition of "imminent danger" that requires a demonstration of a "substantial likelihood of an immediate threat that death, serious bodily harm, or abuse of a controlled substance will occur" without the suspension. *Id.* § 824(d)(2). In short, DEA's discretion to suspend an existing COR is limited by statute, thus creating a protected property interest in a registrant with a suspended COR.

While the D.C. Circuit has never addressed the specific question of whether a DEA registrant has a protected property interest in an existing COR, courts within this District have routinely acknowledged that such an interest exists. For example, in *Adya LLC v. DEA*, the district court ruled that a pharmacy had a

12

property interest in its suspended DEA COR because 21 U.S.C. § 824(d) provides

"constraints" on DEA's discretion to issue an ISO.  No. 1:26-cv-141, 2026 U.S. Dist.

LEXIS 60710, at *14 (D.D.C. Mar. 23, 2026).  In *Cardinal Health, Inc. v. Holder*, the

Court acknowledged that there was no dispute in a pharmacy's challenge to a DEA

ISO that the pharmacy had "been deprived of a protected interest in property or

liberty."  846 F. Supp. 2d 203, 229 (D.D.C. 2012).  Similarly, in *Novelty Distributors*

*v. Leonhart*, the Court noted that 21 U.S.C. § 824(d) is "designed to ensure that a

party is not deprived of its property interest in its registration without due process

of law."  562 F. Supp. 2d 20, 28 (D.D.C. 2008).  Additionally, DEA has traditionally

acknowledged that registrants have a property interest in their CORs that requires

due process.  *See, e.g.*, *Morris W. Cochran, M.D.; Decision and Order*, 78 Fed. Reg.

62678, 62682 (Oct. 22, 2013) ("A [registrant] has a constitutionally protected

property interest in his DEA registration"); *Barry M. Schultz, M.D.; Decision and*

*Order*; 76 Fed. Reg. 78695, 78696 (Dec. 19, 2011) ("The [registrant] has a

constitutionally protected property interest in his DEA registration").

      *Second, Defendants have violated Richie's due process rights by failing to*

*provide Richie with a prompt post-suspension hearing.*  Given that Richie has a

protected property interest in its suspended COR, the analysis turns to whether

Defendants have violated Richie's due process rights.  *See Gen. Elec. Co. v. Jackson*,

610 F.3d at 117.  What makes this case unique from historic ISO challenges—and

why another court in this District issued a preliminary injunction last week against

these same Defendants in another ISO challenge—is that DEA has failed to provide

13

Richie with the opportunity for a prompt post-suspension hearing, including in violation of its own regulations.

A suspension of a registration or permit is not a *per se* unconstitutional violation of due process where the aggrieved party is afforded an opportunity for a post-suspension hearing. Due process, however, requires "assurance of a *prompt* postsuspension hearing." *Barry*, 443 U.S. at 68 (emphasis added); *see also 3833 Conn.*, 336 F.3d at 1074 (noting that regulations that provide for an "expedited post-deprivation review" met due process requirements); *Scotts Valley Band of POMO Indians v. Burgum*, 808 F. Supp. 3d 1, 27-28 (D.D.C. 2025) (finding a violation of due process where the government never gave the plaintiff the "'prompt judicial or administrative hearing' that due process demands"). The *Matthews v. Eldridge* test applies, which requires courts to consider (1) the private interests at stake, (2) the risk of erroneous deprivation of those interests posed by existing procedures and the probable value of further safeguards, and (3) the government's interest. 424 U.S. 319, 335 (1976).

DEA has failed to provide Richie with a prompt post-suspension hearing. The ISO and OSC issued on January 30, 2026, set a hearing date of March 17, 2026, "or on such a subsequent date designated by" the ALJ. Ex. B, at 1. After DEA served the ISO and OSC on February 10, 2026, Richie promptly requested a hearing on February 25, 2026, and asked that it be scheduled "as soon as practically possible." Ex. C, at 1. By letter on February 26, 2026, DEA's Office of Administrative Law Judges acknowledged receipt of Richie's request for a hearing

14

and explained that Richie would be "notified as soon as an [ALJ] is assigned and prehearing proceedings begin/resume." Ex. D, at 1. More than a month later, Richie still has no hearing date, and Defendants have denied Richie the prompt hearing that Richie requested and which it was entitled to under the Fifth Amendment and DEA's regulations.

Recognizing the importance of a prompt post-deprivation hearing, DEA's own regulation governing ISOs states that any registrant whose COR is suspended by an ISO "may request a hearing on the revocation or suspension of his/her registration at a time earlier than specified in the [OSC]." 21 C.F.R. § 1301.36(h). The regulation directs that this request "shall be granted by the Administrator, who shall fix a date for such hearing as early as reasonably possible." *Id.* Consistent with this mandate, an internal DEA memorandum from 2006 requires ALJs to commence a hearing within 60 days of the action being issued and to certify a completed hearing record to the Administrator within 150 days of suspension.[2] As of this filing, 61 days have passed since issuance of the OSC/ISO and no hearing has

---

[2] While not publicly available, this memorandum and these timelines are referenced in publicly available records. *See* U.S. Dep't of Just., Office Insp. Gen., *The Drug Enforcement Administration's Adjudication of Registrant Actions,* at 7 (May 2014), https://www.oversight.gov/sites/default/files/documents/reports/2017-11/e1403.pdf; *Syed Jawed Akhtar-Zaidi, M.D.; Decision and Order*, 80 Fed. Reg. 42962, 42971 & n.21 (July 20, 2015) ("I am guided by the expectation that where doing so is not inconsistent with a litigant's rights under the Due Process Clause or the Administrative Procedure Act, I should endeavor to submit the certified record of these proceedings to the Administrator in accordance with 21 CFR 1316.65 not later than the 150th day after the issuance of an immediate suspension (excepting any days caused by Respondent's own actions).") (citing *Memorandum re: Immediate Suspension of DEA Registration; Hearing Process DFN: 301-01*, Oct. 4, 2006).

been scheduled.  Even if Defendants were to set a hearing date for tomorrow, it such attempt would be insufficient to meet the Due Process standard requiring a prompt hearing, DEA's own regulation requiring DEA to set a hearing date as early as reasonably possible, and even DEA's internal 60-day policy designed to ensure prompt hearings in ISO cases.

For these same reasons, another court in this District granted a preliminary injunction against Defendants in the *Adya* decision last week.  Similar to Richie, the pharmacy in *Adya* requested a hearing in January 2026 on its suspended COR but, two months later, had received no hearing date.  *Adya*, No. 1:26-cv-141, 2026 U.S. Dist. LEXIS 60710, at *23-24.  Noting that due process requires that a post-suspension hearing "come 'prompt[ly],' 'proceed and be concluded without appreciable delay,'" *id.* at *23 (citing *Barry*), the district court found that Defendants' failure to provide the pharmacy with a prompt hearing date made for "simple *Matthews* balancing," holding that the full penalty and harm imposed on the pharmacy outweighed any "weak" interest DEA had in a further delayed hearing. *Id.* at *24-25.  Similar to *Adya*, another court in this District in an earlier decision granted a preliminary injunction against DEA on a finding that the plaintiffs were likely to prevail on a due process challenge because the CSA and DEA's implementing regulations were "constitutionally deficient because they fail to assure the prompt post-suspension hearing required by due process."  Order and Findings of Law and Fact, *Apothecary Arts Pharmacy, Inc. v. Gonzales*, No. 06-cv-1119 (D.D.C. Feb. 3, 2026) (ECF No. 9).

16

So too the Court should grant this preliminary injunction and lift the suspension on Richie's COR. Richie is losing customers, sales, and reputation. Ex. A ¶ 23. State agencies are bringing similar actions against its state licenses based on DEA's ISO and OSC. *Id.* ¶ 23(f). And Richie's controlled substance inventory seized by DEA will begin to expire. *Id.* ¶ 23(a). This interest far outweighs whatever weak interest DEA has in continuing to push off any hearing date. The time for a prompt post-suspension hearing has expired. That DEA only assigned an ALJ in the *hours* after filing of this lawsuit does not cure Defendants' unconstitutional and unlawful conduct. Only emergency injunctive relief can protect Richie from Defendants' unconstitutional violation of due process.

### B. The ISO is arbitrary and capricious because DEA failed to adequately explain its finding of "imminent danger."

An agency action violates the APA as arbitrary and capricious, 5 U.S.C. § 706(2)(A), when the agency fails to "adequately explain its result." *Public Citizen, Inc. v. FAA*, 988 F.2d 186, 197 (D.C. Cir. 1993). It is not enough simply to list facts and conclusions; instead, the agency must "connect" the facts and conclusions in a "rational way." *Dickson v. Sec'y of Def.*, 68 F.3d 1396, 1407 (D.C. Cir. 1995). If an agency "merely parrots" the language of the statute "without providing an account of how it reached its results," the agency "has not adequately explained the basis for its decision" and has acted in an arbitrary and capricious manner. *Id.* at 1405.

DEA attempts to provide a number of allegations in the ISO to support its conclusion that Richie's continued operation poses an "imminent danger to the public health or safety" under 21 U.S.C. § 824(d), namely the *Suspicious Order*

17

*Allegations* and the *Imposter Theft Allegations.*  The *Suspicious Order Allegations* are old and stale, the most recent conduct alleged to have taken place over two years ago.  The *Imposter Theft Allegations* are somewhat less stale (approximately four months prior to the ISO) but involve theft of opioid pills, as a result of a sophisticated scheme by which Richie was duped by thieves posing as DEA agents, and an untimely written report (by a few days) to DEA of the theft.

The ISO does not rationally connect these alleged facts to its conclusion that there is an imminent danger.  The statute sets forth that "imminent danger to the public health or safety" means that:

> due to the failure of the registrant to maintain effective controls against diversion or otherwise comply with the obligations of a registrant under [the CSA], there is a ***substantial likelihood*** of an ***immediate threat*** that ***death***, ***serious bodily harm***, or ***abuse of a controlled substance*** will occur in the ***absence*** of an immediate suspension of the registration.

21 U.S.C. § 824(d)(2) (emphasis added).  The ISO, however, makes no rational attempt to demonstrate how there is any "threat" that someone will die, be seriously harmed, or will abuse a controlled substance if Richie—a wholesale distributor[3]— continues to maintain its COR.  Even if such a threat existed, the ISO does not

---

[3] DEA's former Chief Administrative Law Judge has written about the attenuated nature of this standard and the "high burden" on DEA to demonstrate this standard, noting that, "[h]owever unlikely [DEA] is to successfully bear this ***heavy burden*** in the case of individual practitioners or pharmacies, it is ***all but logically impossible***, due to the obvious attenuation between the distributor or manufacturer registrant and the potential victims, to make the requisite showing up the production chain, in the case of a distributor or manufacturer."  John J. Mulrooney, II & Katherine E. Legel, *Current Navigation Points in Drug Diversion Law: Hidden Rocks in Shallow, Murky, Drug-Infested Waters*, 101 Marq. L. Rev. 333, 346-47 (2017) (emphasis added).

explain how that threat is "immediate," especially in light of the stale *Suspicious Order Allegations* and unlikely-to-be-repeated theft by conmen posing as DEA agents in the *Imposter Theft Allegations*.  The ISO has not even attempted to show a "substantial likelihood" that this threat could exist.  In fact, DEA's delay in issuing an ISO (January 30, 2026) until *114 days after* the DEA Imposter Agent theft (October 8, 2025), and then further delay in executing the ISO (February 10, 2026) by another *11 days after* the ISO had been signed belies any argument that Defendants truly believe there is any sort of "immediate" threat of death, serious bodily harm, or abuse.

Instead, DEA does exactly what the D.C. Circuit has warned against: it parrots the statute.  In the paragraph of the ISO and OSC suspending Richie's COR, the DEA Administrator regurgitates that Richie's continued registration would constitute an "imminent danger" because "of the substantial likelihood of an imminent threat that death, serious bodily harm, or abuse of controlled substances will occur in the absence of this suspension."  Ex. B, at 13.  The ISO and OSC provide no rational explanation or connection of the alleged facts to this conclusion.  As such, Defendants acted arbitrarily and capriciously by failing to adequately explain the basis for the ISO.

### C. Defendants acted arbitrarily and capriciously by refusing to consider evidence of Richie's corrective measures.

An agency also acts arbitrarily and capriciously when it "refus[es] to consider evidence bearing on the issue before it" or ignores "evidence contradicting its position."  *Butte Cnty. v. Hogen*, 613 F.3d 190, 194 (D.C. Cir. 2010); *see Daikin*

19

*Applied Americas Inc. v. EPA*, 39 F.4th 701, 712 (D.C. Cir. 2022).  In that same vein, an agency action is arbitrary and capricious "if it rests upon a factual premise that is unsupported by substantial evidence."  *Ctr. For Auto Safety v. FHA*, 956 F.2d 309, 314 (D.C. Cir. 1992).

The ISO ignores significant evidence contrary to its conclusion that Richie has failed to maintain effective controls against diversion and that Richie's registration presents an "imminent threat."   For starters, while DEA makes much of the stale *Suspicious Order Allegations* from over two years ago, it ignores and does not address the fact that Richie has completely rebuilt its suspicious order monitoring and customer due diligence systems over the last couple of years.  Ex. A ¶¶ 7-8.  These measures include: (1) promoting and training a new Compliance Manager and Compliance Officer; (2) enhancing Richie's suspicious order monitoring and customer due diligence standard operation procedures ("SOPs"), documentation, and practices; (3) retraining all responsible Richie employees on the enhanced suspicious order and customer due diligence SOPs; and (4) revamping Richie's overall controlled substance compliance SOPs.  *Id.* ¶ 8.  Additionally, all of these enhancements were shared with DEA during a course of meetings in 2025. *Id.* ¶¶ 9-10.  As to the *Imposter Theft Allegations*, DEA has failed to consider the additional remedial actions Richie has taken to avoid this type of rare, albeit important, fraudulent theft scheme.  For example, Richie relieved its CEO—the person contacted by the imposter DEA agent—from any controlled substance regulatory and compliance responsibilities, and Richie has upgraded its computer

security system and trained employees on appropriate cybersecurity measures. *Id.* ¶ 26. Richie requested to meet with DEA back in October 2025 to discuss these measures, but DEA never agreed to meet with Richie. *Id.* ¶ 15.

The ISO makes clear that Defendants have failed to consider—or have intentionally ignored—this evidence that runs contrary to the finding of imminent danger to support the ISO. The court in *Adya* found that Defendants acted arbitratrily and capriciously by failing to meaningfully engage with the registrant to allow it to do its own investigation or to refute the pharmacy's own investigation findings. 2026 U.S. Dist. LEXIS 60710, at *17-18. And in *Goodson Drug Co. v. Bondi*, another district court ruled that the DEA ISO was unlawful where DEA refused to communicate meaningfully with the registrant, including not interviewing its employees, causing it to "miss important aspects of the problem." No. 2:25-cv-257, 2025 U.S. Dist. LEXIS 233264, at *24 (N.D. Ga. Oct. 15, 2025). Similarly here, Defendants have not demonstrated consideration of Richie's significant enhancements to its overall controlled substance compliance program, change in personnel and management responsibilities, and additional security measures, including refusing to meet with Richie after the October 2025 imposter agent theft. As such, Defendants acted arbitrarily and capriciously by issuing the ISO and suspending Richie's COR.

## II.    Richie has suffered, and is likely to continue to suffer, irreparable harm in the absence of preliminary relief.

Without a preliminary injunction, Richie will continue to grapple with an irreversible loss of its business reputation, goodwill, customer base, and resulting

21

economic damages.  These losses are not recoverable, and are, in fact, irreparable.  *See League of Women Voters of United States v. Newby*, 838 F.3d 1, 7-8 (D.C. Cir. 2016) ("The party seeking [injunctive relief] must make two showings to demonstrate irreparable harm.  First, the harm must be 'certain and great,' 'actual and not theoretical,' and so 'imminen[t] that there is a clear and present need for equitable relief to prevent irreparable harm.' . . . Second, the harm must be beyond remediation.")

> ### A. Without preliminary injunctive relief, Richie's loss of reputation and goodwill will be irreparable.

As one of the oldest wholesale distributors in the country, Richie maintains a strong reputation and important role in the pharmaceutical industry, reliably providing its customers with quality medications needed to treat patients throughout the country.  Ex. A ¶¶ 3-5.  These medications, including the controlled substances that Richie distributes, are critical to Richie's customers—distributors, pharmacies, hospitals, clinics, and doctors' offices—who use or further supply these drugs for the treatment of patients.  *Id.*

DEA's suspension of Richie's COR without warning abruptly stopped Richie's delivery of all controlled substance medication to these customers, causing significant harm to reputation and customer goodwill.  *Id.* ¶¶ 18, 23.  To date, 127 of Richie's 565 active customers have notified Richie that they will no longer do business with the company, representing a loss of approximately 22% of Richie's customer base in the span of less than two months.  *Id.* ¶ 23(b).  Approximately 125 additional customers ceased ordering any product from Richie in March 2025.  *Id.*

22

These customers are leaving to find other distributors from which they can purchase both controlled and non-controlled substances. *Id.* Richie continues to lose customers on a weekly basis to its competitors as a result of the ISO, and it is unlikely that the company will ever recover the majority of these accounts even if it wins back its COR. *Id.*

Additionally, DEA's ISO has resulted in state licensing authorities taking action against Richie based on the ISO. *Id.* ¶ 23(f). For example, on March 3, 2026, the Ohio Board of Pharmacy summarily suspended Richie's wholesale distributor license prior to any hearing based on DEA's ISO. *Id.* Eight days later, the Virginia Board of Health Professions issued a mandatory suspension of Richie's distributor registration based on the Ohio Board of Pharmacy suspension. *Id.* Richie anticipates additional actions or inquiries based on DEA's baseless allegations in its unlawful ISO in the near future. *Id.*

These "concrete," non-"speculative" harms that are sure to worsen as the ISO continues, demonstrating irreparable harm to Richie and the need for immediate injunctive relief. *See Atlas Air, Inc. v. Int'l Bhd. of Teamsters*, 280 F. Supp. 3d 59, 104 (D.D.C. 2017).

### B. The ISO will continue to wreck irreparable financial harm to Richie without preliminary injunctive relief.

In addition to the loss of reputation and goodwill, Richie has also suffered, and continues to suffer, financial harm. While financial harm on its own is not necessarily enough for purposes of obtaining injunctive relief, the D.C. Circuit has explained that there are two exceptions to this general rule. First, financial harm is

considered irreparable injury where the monetary loss "threatens the very existence of the movant's business." *Wisconsin Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985); *see Cardinal Health, Inc. v. Holder*, 846 F. Supp. 2d 203, 211 (D.D.C. 2012). Second, financial harm can equate to irreparable injury when the economic loss is "unrecoverable," such as when the defendant is entitled to sovereign immunity. *Cardinal Health*, 846 F. Supp. 2d at 211; *Nat'l Mining Ass'n v. Jackson*, 768 F. Supp. 2d 34, 53 (D.D.C. 2011); *Smoking Everywhere, Inc. v. FDA*, 680 F. Supp. 2d 62, 77 n.19 (D.D.C. 2010).

If the ISO continues in effect, Richie will almost certainly be forced to close its doors. Ex. A ¶ 25. Richie has lost significant sales, both in controlled substance and non-controlled substance medication, and customers since DEA executed its unlawful ISO, and these losses have been "devastating" to the company. *Id.* ¶ 23. Specifically, Richie has realized over a 50% drop in total sales in March 2026 compared to January 2026 (the month before the ISO). *Id.* ¶ 23(c). A significant drop in sales is attributable to the loss of three of Richie's top ten customers who are no longer purchasing controlled substances from Richie as a result of the ISO. *Id.* ¶ 23(d). Greater loss of sales and, thus, of revenue, are expected in the next few weeks, especially as state licensing authorities begin to restrict sales into other states. *See id.* ¶ 23.

Richie has also begun to lose employees, including approximately a third of its sales team who cannot sustain a livelihood because of the loss of commissions. *Id.* ¶¶ 23(e), 25. As the days go by, Richie is also losing any value remaining in its

inventory of controlled substances seized by DEA and valued at $675,058.21. *Id.* ¶ 23(a). These drugs are losing value based on their expiry date and some may have no value at all if DEA is not storing them under proper environmental factors. *Id.*

In short, if Richie does not receive some form of preliminary relief from the Court, it will almost certainly be forced to close its business as the company cannot sustain the financial loss inflicted on the company by DEA's ISO. *Id.* ¶ 23. Richie's harm is compounded by the fact that it will never be able to recover damages from Defendants for the financial harm they have caused as Defendants are protected by sovereign immunity. For almost two months, Richie has tried to weather the storm, relying on the empty promise of a prompt administrative hearing. *Id.* ¶ 19, 24. At this point, the window for a prompt hearing has passed, Richie's financial coffers are near depletion, and the business is facing closure, necessitating this lawsuit and emergency injunctive relief. *Id.* ¶¶ 19-20, 23-24.

Just as the Court ruled in *Adya*, the sudden decline in sales and customers demonstrates the irreparable injury to Richie. *Adya*, at *31. This injury is compounded by the fact that no administrative hearing date has been set, nor, at this point, is there any chance of a prompt hearing as more than two months have passed since issuance of the ISO. *Id.*

**III.   The balance of equities and public interest factors favor Richie.**

When the government is the opposing party, the Court merges its analysis of the third (balance of equities) and fourth (public interest) factors. *Nken*, 556 U.S. at

435.  Here, the balance of equities lies overwhelmingly in Richie's favor.  If the ISO stands, Richie will almost certainly be forced to shutter its doors.  Ex. A ¶ 23.  DEA, on the other hand, will not suffer injury if this Court grants Richie's request for immediate relief, which is especially clear given the months for some, and years for most, between the allegations and DEA's ISO.  And while DEA may have an interest in regulation of the distribution of controlled substances, "DEA can protect that interest through its speedy administrative process," should it choose to do so. *Goodson Drug*, 2025 U.S. Dist. LEXIS 233264, at *28; *see Adya*, 2026 U.S. Dist. LEXIS 60710, at *32 (finding that the loss of consumer goodwill, revenue, and potential loss of employees was a greater hardship to the pharmacy that any "comparatively little hardship to DEA").  As it stands, not only is Richie being irreparably harmed, but its customers who rely on Richie for a steady stream of medication are harmed as they struggle to find new suppliers.  Ex. A ¶ 23(g).  This harm directly impacts legitimate patients attempting to find necessary medication. *Id.*

## CONCLUSION AND REQUEST FOR EXPEDITIOUS HEARING

For the foregoing reasons, Richie respectfully requests that the Court grant its motion for a preliminary injunction.  Richie also respectfully requests an expeditious hearing on its motion.  As demonstrated above, Richie's seized inventory loses value every day, the company continues to lose sales, customers, and employees, and the company likely will not survive absent some form of

emergency injunctive relief.  *Id.* ¶ 23.  All of this necessitates an expeditious hearing on this Motion.

Dated: April 1, 2026                    Respectfully submitted,

                                        */s/ Andrew J. Hull*
                                        Andrew J. Hull (D.C. Bar No. 1022649)
                                        HYMAN, PHELPS & MCNAMARA, P.C.
                                        1101 K Street NW, Ste. 700
                                        Washington, D.C.  20005
                                        Tel.: (202) 737-9630
                                        Email: ahull@hpm.com

                                        *Counsel for Richie Enterprises LLC*